ELLIS GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@ellisgeorge.com
Christopher W. Arledge (State Bar No. 200767)
  carledge@ellisgeorge.com
George B. A. Laiolo (State Bar No. 329850)
  glaiolo@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff and Counter-
Defendant ImprimisRx, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPRIMISRX, LLC, | Case No. 3:21-CV-01305-BAS-(DDL) |
| Plaintiffs, | **PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR** |
| vs. | |
| OSRX, INC.; OCULAR SCIENCE, INC., | |
| Defendants. | Date:      April 25, 2025<br>Judge:    Cynthia Bashant<br>Ctrm:     12B |
| | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |
| | Trial Date:    November 12, 2024<br>Action Filed:  July 20. 2021 |
| AND RELATED CROSS-ACTION | |

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

# **TABLE OF CONTENTS**

**Page**

I.    Introduction ...................................................................................... 1

II.   Standards of Review .......................................................................... 2

III.  Defendants Waived Their Arguments Under Rule 50(b). ................. 3

IV.   There is no Basis to Overturn the Verdict on Validity .................... 4

    A.   The Jury Instruction Submitted by Both Parties Compelled the Jury to Find the Marks Descriptive .......................................... 4

    B.   Ample Evidence Showed the Marks are not Generic and Acquired Secondary Meaning ................................................. 5

        1.   The Marks are not Generic Terms; the PTO Agreed. ................. 5

        2.   Competitors (Besides Defendants) Didn't use the Marks. ........... 7

        3.   A Mark's Secondary Meaning is Relevant to Whether it is Generic. ................................................................................ 9

        4.   Defendants' Other Arguments for Genericness Fail. ................. 9

        5.   Sufficient Evidence Supported Secondary Meaning. ................. 11

V.    There is no Basis to Overturn the Verdict on Likelihood of Confusion. ........ 13

    A.   Evidence of Intentional use of Imprimis's Established Marks in the Same Market (Factors 1, 2, 3, 5, and 6) ............................. 14

    B.   Evidence of Resulting Confusion (Factor 4) ........................... 16

VI.   There is no Basis to Overturn or Reduce the Jury's Damages Award ............ 17

    A.   The Ninth Circuit has Repeatedly Held that Courts Must Make Trademark Infringement Unprofitable Even if Exactitude in Damages Calculation is Impossible. ...................................... 17

    B.   In Light of the Difficulty of Proving Particular Lost Sales Caused by Trademark Infringement, the Law Allows a Defendant's Profits to Serve as a Proxy for the Plaintiff's Actual Damages ............ 18

    C.   Imprimis Proved what the Law Required it to Prove. ............. 18

    D.   Defendants' Arguments Fail. .................................................. 20

        1.   Allegedly no Lost Profits .......................................................... 20

        2.   Allegedly no Actual Confusion ................................................ 21

        3.   Allegedly not a "Two-Player Market" ...................................... 22

i

Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

|   |   | 4. | Allegedly no Basis to Calculate Damages | 22 |

4.   Allegedly no Basis to Calculate Damages...............................22

5.   Allegedly Arbitrary Damages Award.......................................22

E.   A Final Word on Damages.....................................................23

-ii-                                    Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

1

# **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Adray v. Adry-Mart, Inc.*,

4
    76 F.3d 984 (9th Cir. 1995) ............................................................ 12, 18

5
*Advertise.com, Inc. v. AOL Advert., Inc.*,

6
    616 F.3d 974 (9th Cir. 2010) ..................................................................... 5

7
*Banff, Ltd. v. Federated Dept. Stores, Inc.*,
    841 F.2d 486 (6th Cir. 1988) ................................................................... 16

8
*Brookfield Commc'ns v. W. Coast Ent. Grp.*,

9
    174 F.3d 1036 (9th Cir. 1999) ............................................. 14, 15, 16, 17

10
*Clicks Billiards, Inc. v. Sixshooters, Inc.*,

11
    251 F.3d 1252 (9th Cir. 2001) ................................................................. 13

12
*Consumerinfo.com, Inc. v. Chang*,

13
    2011 WL 13190161 (C.D. Cal. Jan. 4, 2011) .......................................... 9

14
*Costa v. Desert Palace, Inc.*,

15
    299 F.3d 838 (9th Cir. 2002) ............................................................. 3, 11

16
*Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*,

17
    109 F.3d 275 (6th Cir. 1997) ................................................................... 17

18
*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,

19
    95 F.3d 1422 (9th Cir. 1996) ................................................................... 17

20
*E.E.O.C. v. Go Daddy Software, Inc.*,

21
    581 F.3d 951 (9th Cir. 2019) ..................................................................... 4

22
*E.E.O.C. v. Pape Lift, Inc.*,
    115 F.3d 676 (9th Cir. 1997) ..................................................................... 3

23
*E.T. Browne Drug Co. v. Cococare Prods., Inc.*,

24
    538 F.3d 185 (3d Cir. 2008) ..................................................................... 8

25
*F21 OpCo, LLC v. Airwair Int'l Ltd.*,

26
    2023 WL 2626368 (C.D. Cal. Feb. 17, 2023) ........................................ 18

27
*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns., Inc.*,

28
    198 F.3d 1143 (9th Cir. 1999) ............................................................. 6, 7

-iii-                                     Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

*Fishman Transducers, Inc. v. Paul*,
  684 F.3d 187 (1st Cir. 2012) .......................................................... 18, 22

*Freund v. Nycomed Amersham*,
  347 F.3d 752 (9th Cir. 2003) ............................................................. 3

*Fujifilm Corp. v. Motorola Mobility LLC*,
  182 F. Supp. 3d 1014 (N.D. Cal. 2016)............................................. 23

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) ................................................................ 17

*Isabel v. Reagan*,
  987 F.3d 1220 (9th Cir. 2021) .......................................................... 24

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023) ........................................................... 17

*JL Beverage Co, LLC v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ...................................................... 12, 14

*JUUL Labs, Inc. v. Chou*,
  676 F. Supp. 3d 827 (C.D. Cal. 2023) ............................................... 12

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) .......................................................... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
  498 F. Supp. 3d 1296 (S.D. Cal. 2020) ............................................. 24

*Levi Strauss & Co. v. Blue Bell, Inc.*
  778 F.2d 1352 (9th Cir. 1985) ............................................................ 5

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ...................................................... 21, 22

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ............................................................ 14

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
  390 F.2d 117 (9th Cir. 1968) .................................................. 17, 18, 22

*Marketquest Grp., Inc. v. BIC Corp.*,
  316 F. Supp. 3d 1234 (S.D. Cal. 2018) ............................................. 19

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
   316 US. 203 (1942) ........................................................................... 19, 20

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co., Ltd.*,
   2024 WL 2193323 (N.D. Cal. May 15, 2024) ................................. 23

*Neurovision Med. Prods., Inc. v. NuVasive, Inc.*,
   2014 WL 12544830 (C.D. Cal. Aug. 5, 2014) ............................... 20

*Nintendo of Am., Inc. v. Dragon Pacific Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ........................................................ 19, 20

*P&P Imports LLC v. Johnson Enters., LLC*,
   46 F.4th 953 (9th Cir. 2022) ......................................................... 13

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
   692 F.2d 1272 (9th Cir. 1982) ...................................................... 17

*Raymond v. Wilcox Mem'l Hosp.*,
   403 F. Supp. 3d 868 (D. Haw. 2019) ............................................ 3

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ....................................................................... 3

*San Diego Comic Convention v. Dan Farr Prods.*,
   336 F. Supp. 3d 1172 (S.D. Cal. 2018) ........................................ 2

*Shuffle Master Inc. v. Awada*,
   2006 WL 2547091 (D. Nev. Aug. 31, 2006)................................. 13

*Snap Inc. v. Vidal*,
   750 F. Supp. 3d 1120 (C.D. Cal. 2024).................................... 8, 11

*Stone Brewing Co., LLC v. MillerCoors LLC*,
   2023 WL 6450199 (S.D. Cal. Sept. 28, 2023), *aff'd*, *Stone Brewing Co.,
   LLC v. Molson Coors Beverage Co. USA LLC*, 2024 WL 5244556 (9th
   Cir. Dec. 30, 2024) ................................................................... 23, 24

*Surgicenters of Am., Inc. v. Med. Dental Surgeries Co.*,
   601 F.2d 1011 (9th Cir. 1979) ..................................................... 6, 7

*Thomas & Betts Corp. v. Panduit Corp.*,
   138 F.3d 277 (7th Cir. 1998) ....................................................... 13

-v-                  Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................. 23

*U.S. Jaycees v. S.F. Junior Chamber of Com.*,
    513 F.2d 1226 (9th Cir. 1975) ................................................................. 6

*United States Pat. & Trademark Off. v. Booking.com B. V.*,
    591 U.S. 549 (2020) (Breyer, J., concurring) ........................................ 11

*Venture Tape Corp. v. McGillis Glass Warehouse*,
    540 F.3d 56 (1st Cir. 2008) .................................................................... 20

*Wallace v. City of San Diego*,
    479 F.3d 616 (9th Cir. 2007) ................................................................... 3

*WMS Gaming Inc. v. WPC Productions Ltd.*,
    542 F.3d 601 (7th Cir. 2008) ................................................................. 20

**STATUTES**

15 U.S.C. section 1117 ................................................................. 17, 21, 22

Lanham Act ........................................................................................ 17, 18

**RULES**

Rule 50 ........................................................................................... 3, 20

Rule 59 ................................................................................................. 20

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

# I.    **Introduction**

Defendants carry the heaviest of burdens. They do not argue that the jury was improperly instructed on the law. They just believe, on issue after issue, that the jury got its factual determinations *wrong*. But it is no small matter to take factual determinations from the jury. The Court, the parties, the lawyers, and a group of private citizens gave up weeks of their time and spent huge sums of money to have a jury decide this dispute. There is nothing in the record to suggest that this Court should declare all of that time and money to have been wasted.

Indeed, it is unclear how the jury was supposed to do anything differently. The heart of Defendants' case was an argument that Imprimis's marks were generic, which is, of course, a fact question for the jury. Defendants told the jury—over and over, at least 45 times in fact—that the marks were generic because they described the ingredients of the products. Defendants did this knowing that the form jury instruction, which they stipulated to and which is consistent with the case law, says that marks that describe a product's ingredients are *descriptive*, not generic. If the jury followed the instruction and listened to Defendants' own arguments, Defendants themselves proved why they lose on their key issue.

It did not help Defendants either that their factual case was full of holes. Defendants said that everybody uses these marks. The jury almost certainly found those assertions to be false when Defendants were unable to prove that a single company other than Imprimis and Defendants did so. Defendants' factual case was in fact so barren that their brief relies heavily on a few publications that Defendants never even mentioned at trial. Defendants apparently believe this should be the first case in U.S. history (at least as far as we can tell) where evidence that was deemed so insignificant that it received not a single mention at trial is so critical that it mandates a finding that the jury erred in not considering it.

On damages, in cases of direct competition (as here), the law allows a trademark plaintiff to make a case that a defendant's own profits should be deemed

the rough equivalent of the plaintiff's lost profits. This seems to be a particularly apt case for that principle, as Defendants admitted Imprimis was not just a direct competitor, but *the only competitor* in the compounded eye drug space, and Defendants' own expert found it reasonable to apply *Imprimis's* profit margin to Defendants' revenues when calculating Defendants' relevant profit.

Critically, Defendants never even tried to apportion their profits between those gained through infringement and those gained in lawful ways, even though that was their burden. Instead, they decided to go all in on liability, namely their theory that these marks were generic and that any recovery at all would be improper. That, it turns out, was a bad decision. The jury clearly believed this was largely a two-player market, that Imprimis's trademarks had real value in the marketplace—Defendants' head of marketing essentially admitted as much when he conceded that using these particular marks provided "credibility" with customers—and that it was reasonable to believe that many of Defendants' sales would have gone to Imprimis absent the infringement. Many but not all; the jury weighed the evidence and concluded, as is their right, that some of Defendants' sales still would have gone to Defendants.

Defendants do not come close to carrying their heavy burden to take these factual determinations from the jury. The Court should deny their motion.

## II.  **Standards of Review**

On judgment as a matter of law, the moving party has an "extremely high hurdle to meet" (*San Diego Comic Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1172, 1191 (S.D. Cal. 2018)): "demonstrating that there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." *Id.* at 1179. The court must view the evidence "in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Id.* at 1178–1179. Even if "reasonable minds could differ as to the conclusions to be drawn from the evidence presented," *id.* at 1183–1184, the court can "neither make credibility determinations nor weigh the evidence" because

"credibility, inferences, and factfinding" are for the jury. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). In short, this Court must "**disregard all evidence favorable to the moving party that the jury is not required to believe**." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000) (emphasis added). As to a new trial motion, the court may grant it only if the verdict was "against the clear weight of the evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007). A court may not grant a new trial "simply because it would have arrived at a different verdict." *Id.* at 630; *see also E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 690 (9th Cir. 1997) (when a new trial motion is based on insufficiency of the evidence, "a stringent standard applies").

## III.   Defendants Waived Their Arguments Under Rule 50(b).

"A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). One reason for this rule is that "it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." *Id.* Moreover, although district courts have the ability to—and often do—defer ruling on a Rule 50(a) motion until after the verdict, a party still must state the grounds upon which it is moving under Rule 50(a) and then renewing under Rule 50(b). *See, e.g.*, *Raymond v. Wilcox Mem'l Hosp.*, 403 F. Supp. 3d 868 (D. Haw. 2019) (defendant waived arguments not raised pre-verdict even though court deferred ruling on Rule 50(a) motion until after trial).

Defendants "reserved" their Rule 50(a) motion but never made in writing or orally, prior to the verdict, any of the arguments they seek to "renew" in their Rule 50(b) motion. Defendants thus waived all Rule 50(b) arguments. The result is that the already-high standard of review for a Rule 50(b) motion described above is raised even higher—*i.e.*, the Court must employ plain error review, which is "extraordinarily deferential" and "is limited to whether there was ***any*** evidence to support the jury's

-3-

1  verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 962–63 (9th Cir. 2019)
2  (emphasis in original).

3  **IV.**  **There is no Basis to Overturn the Verdict on Validity**.[1]

4        **A.**  **The Jury Instruction Submitted by Both Parties Compelled the Jury
5              to Find the Marks Descriptive**.

6        Defendants have a lengthy discussion of the law of genericness in their motion;
7  none of it matters. Both parties agreed to give Ninth Circuit Model Jury Instruction
8  15.10—and rightfully so, as it is the model instruction and no case law has ever found
9  it lacking. This Court then, as courts always do, told the jury it must follow those
10 instructions. The jury did so, and in following model instruction 15.10, the jury of
11 course rejected Defendants' genericness arguments.

12       Model instruction 15.10 tells the jury how to distinguish between generic and
13 descriptive marks. It says that descriptive marks "directly identify or describe some
14 aspect, characteristic, or quality of the product to which they are affixed in a
15 straightforward way that requires no exercise of imagination to be understood." This
16 includes describing ingredients. The instruction gives the following example: "For
17 instance, the word 'apple' is descriptive when used in the trademark 'CranApple' to
18 designate a cranberry-apple juice. It directly describes ingredients of the juice."

19       So the jury was instructed that a mark is descriptive—not *can be* descriptive;
20 not *might be* descriptive; but *is* descriptive—when it describes the ingredients of the
21 product. And *Defendants* spent the entire trial telling the jury that Imprimis's
22 trademarks described the ingredients of the products. Defendants said it repeatedly;
23 their counsel and witnesses made the assertion no less than 45 times! *See* Declaration
24 of Keith J. Wesley ("Wesley Decl."), Ex. A,[2] collecting the quotes.

25       Defendants' entire legal strategy was flawed. If Defendants disagreed with

26

27 _____
   [1] Imprimis incorporates by reference its opposition filed as ECF No. 351.
28 [2] All exhibit citations refer to the Wesley Decl. Ex. B is trial transcript excerpts (TT),
   C is Imprimis's trial exhibits (PX), and D is Defendants' trial exhibits (DX).

15.10, they should have objected to it, offered a different instruction, and provided authority. They didn't; they stipulated to it. If Defendants disagreed with the law set forth in model instruction 15.10, they should have made an argument to that effect in a motion for judgment as a matter of law *before* the jury began deliberations, which (as explained above) is a prerequisite to making the renewed motion now. They did not do what was required. They never raised the issue before the jury's verdict.

Indeed, Defendants still do not offer any authority suggesting that the model instruction is wrong. They write a mini law-review article on genericness without confronting the elephant standing behind them. Defendants built their entire trial presentation around an argument that must fail if the jurors simply follow the agreed-upon instructions. Where a defendant stipulates to an instruction that says marks are descriptive where they describe the ingredients of the product, and where the same defendant spends the entire trial telling the jury that the plaintiff's marks describe the ingredients of the products, the defendant cannot reasonably say that the jury committed fatal error when it concluded that the marks are descriptive.

So Imprimis deals with Defendants' legal authority and factual assertions below. Defendants are wrong, as the discussion below shows. But more fundamentally, Defendants' legal and factual arguments do not matter, because the jury correctly applied the law proposed by Defendants themselves to the argument and logic offered by Defendants themselves.

**B.    Ample Evidence Showed the Marks are not Generic and Acquired Secondary Meaning**.

The Ninth Circuit has repeatedly held that whether a mark is generic and/or has acquired secondary meaning are factual issues answered by the jury. *E.g.*, *Advertise.com, Inc. v. AOL Advert., Inc.*, 616 F.3d 974, 977 (9th Cir. 2010) (genericness is a question of fact); *Yellow Cab* at 930 (citing *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355 (9th Cir. 1985) (same for secondary meaning).

**1.    The Marks are not Generic Terms; the PTO Agreed**.

Even if Imprimis's marks were combinations of generic terms—which they are not—they could still serve as descriptive trademarks. It is incorrect that "a generic term plus a generic term equals a generic term." *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns., Inc.*, 198 F.3d 1143, 1149 (9th Cir. 1999) ("*Yellow Pages*") (citing *Surgicenters of Am., Inc. v. Med. Dental Surgeries Co.*, 601 F.2d 1011 (9th Cir. 1979)). "Junior Chamber of Commerce" is descriptive even though "junior" and "chamber of commerce" are generic. *Yellow Pages* at 1149 (citing *U.S. Jaycees v. S.F. Junior Chamber of Com.*, 513 F.2d 1226 (9th Cir. 1975)). The same is true for "Park 'N Fly," "California Cooler," and "Self-Realization Fellowship." *Yellow Pages* at 1149–50 (citing various Ninth Circuit cases). The words and phrases that comprise these composite marks are all generic; yet, when combined, they can create a descriptive mark that conjures a brand.

Imprimis's marks are unique combinations of particular abbreviations of generic terms—the same framework used in the Ninth Circuit's exemplar descriptive trademark: "CranApple." *See* Jury Instruction No. 12. While "prednisolone" is the generic English word to define a particular compound, "pred" is not. TT at 122:2–16. The same is true for "moxifloxacin" versus "moxi"—the abbreviation is not the generic term that everyone in the market must be able to use. And Imprimis does not even claim trademark protection in the isolated abbreviations; it claims protection in unique combinations of abbreviations. *Id.* at 120:25–124:12. Similarly, in "CranApple", the generic "apple" merges with an abbreviation for the generic "cranberry" ("cran") to create the model descriptive trademark in this circuit. CranApple "directly describes ingredients" of the product to which it refers, yet it can still identify the brand that sells it. Because, like the other eight marks, "Dex-Moxi" "directly describes some aspect of the product" (dexamethasone and moxifloxacin), the jury instruction and cited authority show that Plaintiff's marks are descriptive.

Numerous PTO examiners agreed. During the registration process, six different examiners raised preliminary questions about whether Imprimis's marks may be

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

1    generic. *See*, *e.g.*, DX 5, 10, 28, 44, 68, 82. Yet every mark earned registration not

2    afforded to generic marks. *See* PX 165–173. Like the jury in this case, these examiners

3    did not make their decisions arbitrarily; they weighed evidence and argument and

4    found the marks at least descriptive.

5        Defendants effectively claim a case from the District of New Jersey creates a

6    ~pharmaceutical exception~ to trademark law. *See* Mot. at 17 ("For pharmaceuticals,

7    a medication is not a mere 'ingredient' or characteristic of the good. The medication

8    *is* the good for trademark purposes"). Their supporting case, *Pharmacia Corp. v.*

9    *Alcon Labs., Inc.*, says no such thing; it says only "[p]rescription drugs are a unique

10   commodity" (Mot. at 10). 201 F. Supp. 2d 335, 374 (D.N.J. 2002). Indeed, the

11   example from *Pharmacia* quoted in the motion supports Imprimis. Defendants note

12   that "[T]imolol-latanoprost is [a] generic name for [a] drug marketed under brand

13   name Xalacom." Mot. at 10. But Xalacom is only *one* registered trademark for

14   timolol-latanoprost; another is Tim-Lat, the valid mark Defendants willfully

15   infringed. PX 171; ECF No. 342 ("Verdict") at 1.g, 3.g, 8.g. Imprimis has never

16   claimed trademark protection in the full generic terms, and has not sued the owner of

17   Xalacom because that owner does not call Xalacom "Tim-Lat."

18       Some chemical brand names sound very different from their generic

19   components, like Advil for ibuprofen. But that alternative marketing choice does not

20   create a "very different" doctrine for descriptive trademarks like CranApple, or for

21   descriptive "pharmaceutical trademarks" like Botox (*bo*tulinum *tox*in). TT at 124:13–

22   25. Nor does that marketing choice render Imprimis's brand names generic as a matter

23   of law. As discussed below, the record here contained sufficient evidence in support

24   of the jury's verdict. *Cf. Surgicenters*, 601 F.2d at 1017 as discussed in *Yellow Pages*

25   at 1148–49 (finding genericness as a matter of law based on distinctly complete and

26   unquestionable evidence not present here).

27       **2.    Competitors (Besides Defendants) Didn't use the Marks**.

28

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

Contrary to Defendants' assertions otherwise, evidence that competitors do not use a brand-owner's marks *is* evidence those marks are not generic. 2 McCarthy § 12:13 (5th ed.) ("Nonuse by competitors of the contested designation as a generic name is evidence of non-genericness") (citing *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 198 (3d Cir. 2008) (Nonuse by competitors of the term "cocoa butter formula" was evidence that the term was not generic, precluding summary judgment)); *see also Snap Inc. v. Vidal*, 750 F. Supp. 3d 1120, 1140 (C.D. Cal. 2024) (lack of use by competitors supports non-genericness).

In their renewed motion, Defendants observe "the same terminology is used generically by a range of competitors . . . " (Mot. at 4), but they miss the key point. Just like Imprimis and Defendants, these other companies—as all pharmaceutical companies must—include the full, generic name for the compound(s) being sold on their labels. But what all of these other companies *do not do* is use Imprimis's trademarked combinations of abbreviations. For instance, a competitor that offers moxifloxacin sells it as "Vigamox", not "moxi." Mot. at 4 (citing DX 76.042, 87, 105, 110–111). Same for "Zymaxid" versus "gatifloxacin" and the like. Mot. at 4.

The jury almost certainly concluded that Defendants were lying when they claimed that other companies use Imprimis's marks. Defendants said it repeatedly, TT 321:24–322:12, 345:6–346:25, but it wasn't true. For example, Defendants' CEO first claimed Sweet Grass was selling at least some of Imprimis's products using the same names as Imprimis. TT at 321:16–322:7. But when confronted with Sweet Grass marketing, he admitted Sweet Grass didn't use Imprimis's names at all; Sweet Grass called its version of prednisolone-moxifloxacin-bromfenac "BMP", rather than Imprimis's "Pred-Moxi-Brom": ***Sweet Grass used different abbreviations in a different order***. TT at 343:22–347:5. Imprimis's marks didn't prevent Sweet Grass (or those that sell Vigamox or Zymaxid) from selling the drugs. The jury could reasonably conclude from this evidence that Imprimis's trademarks were not generic. Other than the Sweet Grass lie, all Defendants put in evidence was a single

-8-

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

order form from APS Pharmacy that offered "Pred-Moxi" seven months before the PTO processed Imprimis's registration. *Compare* DX 8 *with* PX 172. The jury heard no evidence that APS continued its use after the registration, or that any other company besides APS used the mark as a mark at any point. TT at 365:1–366:22. Besides briefly during the direct and cross of Mr. Sampietro (*id.* at 360:13–362:11 & 365:1–366:22), APS was never discussed.

The final third parties Defendants highlight as using Plaintiff's marks are not third parties at all, but ***Defendants themselves***. DX 76.044, 047–048; PX 230 ¶ 18. The jury was right to reject that Defendants' own use of Imprimis's trademarks establishes genericness, and instead to conclude it established willful infringement.

### 3. A Mark's Secondary Meaning is Relevant to Whether it is Generic.

Although a generic trademark cannot transform into a protectable mark based on secondary meaning alone, recognition of the mark as a brand name—rather than as a mere descriptor—is relevant to both inquiries. *See*, *e.g.*, McCarthy § 12:14 ("[S]urveys that test for secondary meaning . . . may yield relevant results that point towards or away from trademark significance"). Thus, the evidence described below related to secondary meaning is at least supportive (even if not dispositive) in showing the marks are not generic.

### 4. Defendants' Other Arguments for Genericness Fail.

The Court could not overturn the verdict on genericness even if it believed Defendants' evidence was "substantial." *See Consumerinfo.com, Inc. v. Chang*, 2011 WL 13190161, at *1 (C.D. Cal. Jan. 4, 2011) ("although Defendants marshal substantial evidence in support . . . Defendants have not shown that a reasonable jury could not conclude that FREECREDITREPORT.COM is a source identifier").

Defendants cite to scientific journal articles that purportedly establish generic use of the marks. Mot. at 5. Defendants offer three obscure journal articles for this assertion and chastise Imprimis for "not discuss[ing]" them in its post-trial opposition.

Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

Mot. at 6. Yet ***Defendants did not discuss these articles at trial even once***. They are buried on the 65th and 95th pages of a 247-page exhibit (DX 76), and on the 90th page of a 229-page exhibit (DX 49). It is difficult to imagine how the jury could have made factual findings about these articles absent testimony exploring their contents.

Even if the jury managed to sift through these tomes, their contents do not counter the verdict. DX 76.065 (which mentions Dex-Moxi) was published in 2018. Dex-Moxi was first registered to the Principal Register in January 2017. PX 173. A reasonable juror could have inferred that the article was referring to Imprimis's Dex-Moxi because the Imprimis drug was being used therein. DX 49.90 uses "moxi" and "gati" in isolation, not hyphenated or combined with other compound abbreviations as in an Imprimis mark. 49.96 refers to the generic ingredients after citing different brand names like Vigamox (moxifloxacin). Last, DX 76.95 was authored by paid Imprimis consultants who make clear they are using Imprimis products. *Id.* at 76.96 & 100. None of these citations are "powerful indication[s] of genericness." Mot. at 5.

Defendants also assert that Imprimis used the marks to refer to the medications themselves, as opposed to referring to the source thereof. Mot. at 6. Again, *all* descriptive trademarks convey the nature of the product "in a straightforward way that requires no exercise of imagination to be understood." Jury Instruction No. 12. Defendants' argument that "Plaintiff's witnesses confirmed that the purported marks were meant to signify the underlying generic names of the drugs" misses the point. Of course they did, but that is not *all* the marks signified.

Relatedly, Imprimis's use of house marks like "Simple Drops" and "Less Drops" simply illustrates that Imprimis has multiple trademarks. House marks do not weaken product marks inside the house. *See* TMEP (Nov. 2024 ed.) § 1402.03(b) (noting house marks often contain goods bearing separate marks). Ford's "F-Series" does not invalidate its "F-150" mark.

Defendants then highlight their survey evidence. But no case holds that a survey in itself mandates judgment as a matter of law. Quite the contrary. "Survey

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

1  evidence is generally of little value in separating generic from descriptive terms."

2  *United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 572 (2020)

3  ("*Booking.com*") (Breyer, J., concurring) (citing various circuit court cases). The jury

4  could have credited Dr. Groehn's survey to show that the marks were generic, but

5  instead, they apparently found "little value" in its results.

6      Defendants' caselaw does not help them. They cite *Snyder's Lance, Inc. v.*

7  *Frito-Lay N. Am., Inc.*, where the judge, *as fact-finder*, denied summary judgment on

8  genericness despite survey evidence supporting genericness. 542 F. Supp. 3d 371,

9  376–77 (W.D.N.C. 2021). Only because the parties then waived a bench trial and

10 submitted for final judgment based on the written record could the court make its

11 subsequent "*de novo* . . . final factual determination of whether the disputed mark was

12 generic" and ultimately adjudge that it was. *Id.* at 377, 400–401. And even so, the

13 *Snyder's* court blanketed this determination under *Booking.com*'s mandate to consider

14 survey evidence "cautiously" with "due regard for the limitation of such evidence."

15 *Id.* at 397 & n.34. Also relying on *Booking.com*, another judge recently overturned a

16 finding of genericness by the PTO that used the exact same Teflon survey design as

17 Dr. Groehn's. *Snap Inc.*, 750 F. Supp. 3d at 1150–51 (C.D. Cal. 2024).

18      Unlike *Snyder's*, the Court here is not sitting as fact-finder and can "neither

19 make credibility determinations nor weigh the evidence." *Costa*, 299 F.3d at 859. The

20 jury rejected Dr. Groehn's opinions, as is their right. The jury heard evidence that the

21 survey lacked credibility, TT at 385:7–386:14, 510:25–513:18, and that survey

22 respondents could have mistakenly believed combinations of "generic" compounds

23 (referring to the pharmaceutical term of art) must necessarily be "generic" under

24 trademark law, which is false. *See supra* § IV.A; TT at 508:7–509:9.

25      The trademarks are not generic as a matter of law.

26          **5.    Sufficient Evidence Supported Secondary Meaning**.

27      Secondary meaning can be established in many ways, including consumer

28 perception, the degree and manner plaintiff has advertised the mark, whether plaintiff

-11-

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

1   successfully used the mark to increase sales, the length of time and manner in which
2   a plaintiff has used a claimed trademark, whether plaintiff's use has been exclusive,
3   and, importantly here, whether defendant intentionally copied the plaintiff's mark.
4   *See* Jury Instruction No. 13; various cases cited in Ninth Circuit Model Instruction
5   No. 15.11. In addition, "actual confusion is an indicium of secondary meaning."
6   *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995).

7         Imprimis presented proof of nearly every factor supporting secondary meaning.
8   Defendants attempt to rebut the evidence on *only one* of those factors by levying the
9   same survey attacks that failed in court. Defendants mention another factor—
10  intentional copying—but say nothing more about it. Their silence on the remaining
11  factors is deafening.

12        **Overwhelming intentional copying**: Defendants knew about Imprimis's
13  trademarks when adopting the same marks. TT at 233:5–19, 337:8–338:7, PX 2071;
14  *see also JL Beverage Co, LLC v. Jim Beam Brands Co.,* 828 F.3d 1098, 1112 (9th
15  Cir. 2016) (genuine issue on intent when jury could infer that defendant "adopted
16  [plaintiff's] logo with the knowledge that the mark already belonged to [plaintiff]").
17  Defendants' head of marketing knew that defendants were legally prohibited from
18  using the marks, TT at 235:7–18; PX 202, but Defendants used them anyway.
19  Defendants' co-founder learned the value of Imprimis's branding while a paid
20  Imprimis consultant, TT at 140:1–14, 143:14–24, and then encouraged defendants to
21  mimic Imprimis. *Id.* at 306:1–22, 308:19–309:8; PX 199. Defendants also
22  intentionally adopted another trademark (Droplet) that was confusingly similar to
23  Imprimis's "Dropless" mark. TT at 145:18–146:14; DX 27; *see JUUL Labs, Inc. v.*
24  *Chou*, 676 F. Supp. 3d 827, 845 (C.D. Cal. 2023) ("Past lawsuits filed against a
25  defendant can serve as evidence of willfulness").

26        **Relevant consumers associating Imprimis's marks with Imprimis**:
27  Imprimis's expert's survey showed that more than one-third of respondents identified
28  the marks in question with a single source. TT at 373:12–22, 381:12–382:2, 383:2–8.

-12-

The same is true for Defendants' survey, *id.* at 384:3–385:14, and this range has been deemed sufficient to establish a genuine dispute. *Shuffle Master Inc. v. Awada*, 2006 WL 2547091, at *3 (D. Nev. Aug. 31, 2006); *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 295 (7th Cir. 1998) (figures in 30% range probative of secondary meaning and raised material questions of fact).

**Other factors ignored by Defendants**: (a) extensive, exclusive use of the marks in ads and sales, TT at 267:1–275:7; PX 226–228; (b) growing sales through use of the marks, TT at 138:23–139:17, 274:25–275:5; (c) admissions from defendants that the marks were widely known in the industry, *id.* at 246:5–247:5, and gave defendants credibility with doctors, *id.* at 248:6–19; (d) the significance of the marks to the success of Imprimis's business, *id.* at 120:9–19, 125:7–15, 272:20–273:1, 421:5–16 ("Customers, people associate those trademarks with our business"); (e) unsolicited articles linking the marks with Imprimis, *id.* at 272:13–23; (f) evidence that consumers perceived association between Defendants and Imprimis due to Defendants' use of the marks, *id.* at 278:16–280:6, 280:12–23; and (g) actual confusion evidence, described below.

The Ninth Circuit has reversed orders granting judgment as a matter of law on the issue of secondary meaning on records far more sparse than this. *See, e.g.*, *P&P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) ("By submitting evidence of intentional copying and an admissible consumer survey, P&P created a triable issue of fact about secondary meaning").

## V.  There is no Basis to Overturn the Verdict on Likelihood of Confusion.

As with secondary meaning, Defendants quibble with the evidence on two of the eight likelihood-of-confusion factors. And as with their entire motion, Defendants want the Court to replace the jury's view of the evidence with Defendants' own. This Court cannot, because significant evidence supports the verdict.

Weighing the evidence relevant to these factors is the jury's job. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) (likelihood of

-13-

confusion "routinely submitted for jury determination as a question of fact"). The Ninth Circuit "caution[s] against granting summary judgment" in determining cases based on non-exhaustive, multi-factor, fact-intensive inquiries like likelihood of confusion. *JL Beverage*, 828 F.3d at 1105 (9th Cir. 2016). "A jury should not focus on any one factor and [should] consider all relevant evidence in assessing likelihood of confusion." Ninth Circuit Model Instruction No. 15.18 (citing *Brookfield Commc'ns v. W. Coast Ent. Grp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

Intent is crucial. Just as evidence of actual confusion is "persuasive proof that future confusion is likely" . . . "[s]o is evidence that the defendant intentionally copied the plaintiff's mark." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998). Evidence of intentional copying—which Imprimis presented in spades, and which Defendants ignore—supports a *presumption* of likelihood of confusion, especially in the case of virtually identical marks in the same market. *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011); *Brookfield* at 1056 ("in light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course").

## A. Evidence of Intentional use of Imprimis's Established Marks in the Same Market (Factors 1, 2, 3, 5, and 6)

Besides the evidence of intentional copying discussed above, Imprimis also presented evidence of Defendants' intent to trade off Imprimis's goodwill by using the same (or virtually indistinguishable) marks on the same products in the same market. While Defendants knew using Imprimis's trademarks would likely lead to a lawsuit (TT at 235:13–236:16), they continued use despite many viable, non-infringing alternatives. *See* PX 2115.001. A customer of Defendants suggested a few to Eric Garner in 2020: "BrimoDor", "TimoBrimoDor", and "TimoBrimoDorzoLat", because, as this customer knew, certain combinations (like "Tim-Brim-Dor" and "Tim-Brim-Dor-Lat") were trademarked by Imprimis. *Id.* Even if Defendants insisted

-14-

on using Imprimis's same abbreviations, there were still between six and 24 alternative combinations to choose from for each mark. TT at 252:17–253:2, 254:6–23. But Mr. Garner decided to use Imprimis's trademarks anyway—same abbreviations, same order, just with plus signs instead of hyphens. *Id.* & at 241:12–249:1. Why?

> I wanted to use the standard abbreviations, again, that are used in the industry, because **you have more credibility with doctors** if you are using the correct abbreviations that they use versus some wonky kind of exaggerated version like Dr. Wright was offering in his email.

*Id.* at 248:8–12 (emphasis added). The jury had every right to conclude that Defendants used the marks not because they were "generic," but because the marks carried substantial goodwill in the marketplace and that Defendants intended to trade upon that goodwill. *Id.* at 243:13–247:5.

Imprimis also exposed Defendants' other proffered justifications for copying the marks—that regulations required their use, or that the abbreviations followed the order of the respective concentrations from highest to lowest—as lies given under oath (and still addressed nowhere in the renewed motion). *As to regulations, see id.* at 230:6–232:6, 275:21–23, 347:9–20, 473:10–13; *as to ordering, see id.* at 238:24–239:3, 251:5–16, 347:9–23, 353:9–13, 473:14–19.

The evidence further showed Defendants' use in order to trade off the goodwill generated by Imprimis. Imprimis spent substantial time and money marketing its marks with their particular abbreviations in their particular order. *Id.* at 120:9–19, 125:7–15, 153:20–154:10, 267:1–275:7, 421:5–16 ("Customers, people associate those trademarks with our business"). Defendants used Imprimis's trademarks—together with "Imprimis"—as paid Google ad words in order to capture customers searching for Imprimis's products. *Id.* at 541:6–542:20. Defendants' salespeople used Imprimis's marks in emails to potential customers (who were also Imprimis's potential customers). *Id.* at 256:10–259:6; PX 2020; TT at 148:5–149:16; PX 200; TT at 149:17–150:19; PX 1161; TT at 276:7–278:15; PX 220, 2032. Defendants' use

-15-

1  continued through trial. TT at 108:14–109:5, 148:11–19, 151:17–152:6, 237:1–18,

2  276:15–277:12; PX 1161, 2032.

3  **B.    <u>Evidence of Resulting Confusion (Factor 4)</u>**

4  In Medford, Oregon, Imprimis's sales team, including Cindi White, arrived at

5  the office of a potential customer on a sales call. TT at 279:14–280:23. After Imprimis

6  introduced themselves and began the pitch, the customer stated he had just seen an

7  Imprimis sales rep in his office two weeks prior. *Id.* When Ms. White said he must be

8  mistaken, he pulled out one of Defendants' product catalogs. *Id.* Why might this

9  doctor confuse Defendants and Imprimis? Could it be the use of the same exact names

10 for the same exact products? A reasonable juror could so conclude.

11 Defendants claim that under *Arcona, Inc. v. Farmacy Beauty, LLC*, the "overall

12 impression" created by Defendants' "prominent branding, color scheme and styling,

13 which bear no resemblance to Plaintiff's" renders confusion "implausible." Mot. at

14 13 (citing 976 F.3d 1074, 1080–81 (9th Cir. 2020)). But in *Arcona*, "there [were]

15 significant differences between the two products", especially the products'

16 substantially different packaging shapes. *Id.* 1076–80. Here, the jury could have

17 reasonably found the Medford doctor was confused *despite* Defendants' different

18 packaging, *because* of the identical names and identical products. And he was not the

19 only confused customer; ***half of potential customers Ms. White pitched at sales***

20 ***conferences thought Imprimis and Defendants were the same or affiliated***. TT at

21 278:16–279:12. *Arcona* also featured **no evidence of intent**, 976 F.3d at 1081, and,

22 unlike in *Arcona*, there was evidence here that Defendants used the marks beyond

23 print advertising, including in discussions with doctors where no house mark or

24 packaging could be found. TT at 232:7–233:4, 245:22–247:10.

25 Defendants claim confusion is unlikely "where, as here, relevant consumers are

26 sophisticated and would exercise a relatively high degree of care in their purchasing

27 decisions." Mot. at 18. But "where the products are identical and the marks are

28 identical, the sophistication of buyers cannot be relied on to prevent confusion," *Banff,*

-16-

Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

*Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 492 (6th Cir. 1988). Plus, "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997) (cited in *Brookfield* at 1060) (confusion can be likely even among discerning customers).

Use of the same mark on the same product with an intent to trade off the goodwill of the senior user presumptively establishes likelihood of confusion; at minimum, a reasonable juror could have ruled in favor of Imprimis on this issue.

## VI.    <u>There is no Basis to Overturn or Reduce the Jury's Damages Award</u>.

The Ninth Circuit "allow[s] substantial deference to a jury's finding of the appropriate amount of damages." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

### A.    <u>The Ninth Circuit has Repeatedly Held that Courts Must Make Trademark Infringement Unprofitable Even if Exactitude in Damages Calculation is Impossible</u>.

In cases of willful trademark infringement, "the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982) ("[T]he courts must . . . make acts of trade-mark infringement, or at the very least acts of deliberate trade-mark piracy, unprofitable") (citing *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 122–23 (9th Cir. 1968)); *see also Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993) ("The purpose of section 1117 is to take all the economic incentive out of trademark infringement") (cleaned up). For that reason, in cases of intentional infringement, the Ninth Circuit will "accept crude measures of damages." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1222–23 (9th Cir. 2023).

As Defendants' own head of marketing testified: "The last thing you want is to

build a brand that people would conflate with any others." TT at 528:9–16. Yet that is precisely what happened here because of Defendants' willful infringement. The jury's award to compensate Imprimis for that harm was reasonable.

**B.**   **In Light of the Difficulty of Proving Particular Lost Sales Caused by Trademark Infringement, the Law Allows a Defendant's Profits to Serve as a Proxy for the Plaintiff's Actual Damages**.

"[R]ecovery of a defendant's profits may . . . be a proxy for the plaintiff's actual damages." *F21 OpCo, LLC v. Airwair Int'l Ltd.*, 2023 WL 2626368, at *2 (C.D. Cal. Feb. 17, 2023), citing *Adray*, 76 F.3d at 988. "[B]ecause of the difficulties of proving an actual diversion of sales, the courts often assumed or presumed that the infringer's profits consisted entirely of profits on sales that would have been made by plaintiff but for the infringing actions. In competitive relationships, the courts continue to use this method of measuring plaintiff's losses." McCarthy § 30:59. That is so because "between the victim and the wrongdoer, the burden should be and is placed on the wrongdoer to prove, if it can, that some sales were not caused by the infringement, or would not have gone to the plaintiff or that the infringer is more efficient and has lower costs than the plaintiff." *Id.*; *see also Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 196 (1st Cir. 2012) ("The case law amply supports [the proxy theory of damages] where there is direct competition"). As the Ninth Circuit has held: "It would seem fairly evident that the purposes of the Lanham Act can be accomplished by making acts of deliberate trade-mark infringement unprofitable. In the case where there is direct competition between the parties, this can be accomplished by an accounting of profits based on the rationale of a returning of diverted profits." *Maier Brewing Co.*, 390 F.2d at 123.

**C.**   **Imprimis Proved what the Law Required it to Prove**.

Defendants identified Imprimis as their only significant competitor in the compounded ophthalmic drug space. TT at 335:5–336:13, 338:1–7, 341:6–22; PX 163, 2071–72. There was extensive testimony and documentary evidence that

-18-

Case No. 3:21-CV-01305-BAS-(DDL)

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

Imprimis and defendants were promoting to the same exact customers, that customers were confused, and that Imprimis lost sales and customers to defendants. TT at 275:8–14, 281:5–8, 285:1–12. Moreover, this is not a case where the defendant had an exponentially higher profit margin; in fact, *Defendants' expert* found it reasonable to apply *Imprimis's* profit margin to Defendants' revenues for the accused products when calculating Defendants' relevant profit. Ex. 8 at 558:11–559:20, 561:12–562:5. In other words, this is the quintessential case where the law recognizes that an award of the defendant's profits can serve as a proxy for the plaintiff's actual damages.

In terms of the amount of damages, when evaluating an award of the defendant's profits from the infringing goods, the burden on the trademark owner is solely to prove the defendant's revenue from the sale of those goods. The burden then shifts to the defendant to prove the defendant's costs and any amounts attributable solely to factors other than the infringement. 15 U.S.C. §1117(a)(3) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed"); *see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 US. 203, 206–07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark."); *Nintendo of Am., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (same). As this Court echoed when denying summary judgment on damages in a trademark case:

> Defendants argue that there is no evidence they profited from the use of the marks since they never sold articles bearing the infringing mark. Furthermore, Defendants claim they sold many items from multiple sources and it is impossible to determine if a buyer bought an item specifically from the 2011 catalogue or from some other source that had the infringing mark. These are appropriate and valid arguments the Court expects Defendants to make to the jury. At trial Defendants must bear the burden of showing which sales are not attributable to the infringing activity. At this stage, however, Defendants have failed to establish the absence of a genuine issue of material fact.

*Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018).

Defendants provided zero expert testimony on and no method of calculating the sales purportedly solely attributable to factors other than the infringement. The jury could have awarded all of Defendants' profits with no apportionment. *Nintendo*, 40 F.3d at 1012 ("[W]here infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff."); *see also WMS Gaming Inc. v. WPC Productions Ltd.*, 542 F.3d 601, 608–09 (7th Cir. 2008) (reversing district court's ruling on amount of defendant's wrongful gain in trademark case because the district court did not faithfully apply *Mishawaka Rubber*).

In fact, however, the jury did apportion some of the profits. The jury awarded $14,500,000 out of the $27,730,000 identified as wrongful profits by Dr. Wunderlich. PX 216 at B1. Defendants have qualms with Dr. Wunderlich's figure, but ***Imprimis asked the jury in closing for an award based on <u>Defendants' expert's</u> figure***—$18 million. TT at 688:9–689:25. The jury awarded less than Defendants' own expert's figure of profits. No case holds that such an award must be overturned, and cases cited immediately above hold that disturbing a jury's award that is less than the total revenue attributable to the infringing conduct constitutes reversible error. *See also Neurovision Med. Prods., Inc. v. NuVasive, Inc.*, 2014 WL 12544830, at *9 (C.D. Cal. Aug. 5, 2014) (denying Rule 50 and 59 challenge to award of $30 million in trademark case where defendant's expert calculated profit on infringing goods at $38 million).

### D. <u>Defendants' Arguments Fail</u>.

#### 1. Allegedly no Lost Profits

Defendants argue that damages are inappropriate because there was "no evidence of lost profits." The argument fails for multiple reasons.

*First*, Defendants ignore that the entire purpose of the "proxy theory" of damages is to ensure a trademark owner is compensated (particularly in cases of willful infringement) despite the difficulty, if not impossibility, of proving lost sales. McCarthy § 30:59; *see also Venture Tape Corp. v. McGillis Glass Warehouse*, 540 F.3d 56, 63 (1st Cir. 2008) (the proxy theory applies "when mark owner cannot prove

1   actual damages attributable to the infringer's misconduct").

2       *Second*, the Ninth Circuit has rejected the concept that a trademark owner should

3   be denied a monetary recovery in cases of willful infringement simply because there is

4   inadequate evidence of lost profits. *See, e.g., Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982

5   F.2d 1400, 1410–11 (9th Cir. 1993) ("an inability to show actual damages does not

6   alone preclude a recovery under section 1117 . . . In so holding, we express a distinct

7   preference for those opinions permitting relief based on the totality of the

8   circumstances") (internal citations omitted).

9       *Third*, a reasonable juror could have found that Imprimis presented evidence

10  showing a diversion of substantial, if not all, sales due to the infringement. Doctors

11  knew the trademarks, which were critical to Imprimis's success. TT at 120:16–19,

12  153:20–154:10. Defendants testified that when they were starting out, Imprimis was

13  the only player in the compounded ophthalmologic space, *id.* at 221:15–23, everyone

14  in the marketplace recognized the Imprimis trademarks, *id.* at 246:5–247:5, and

15  Defendants had more credibility with doctors by using the marks, *id.* at 248:6–19. A

16  reasonable juror could have found that everyone in the marketplace recognized the

17  Imprimis trademarks because of Imprimis's marketing and sales efforts and innovative

18  products—*i.e.*, exactly what trademarks are intended to protect. The jury could have

19  concluded that "but for" Defendants' use of Imprimis's marks to gain initial interest in

20  the marketplace, Defendants never would have gotten the business off the ground. And

21  because Defendants themselves identify Imprimis as their only significant competitor,

22  a reasonable juror could have concluded that if Defendants had not succeeded, their

23  sales would have gone to Imprimis. TT at 576:3–12.

24      *Fourth*, none of Defendants' cases—which are all out-of-circuit and/or district

25  court decisions—involve the situation here—*i.e.*, a trademark owner seeking to use the

26  "proxy theory" to prove a monetary recovery. They are inapposite.

27          **2.    Allegedly no Actual Confusion**

28      Defendants say evidence of actual confusion is necessary before awarding

-21-

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

1   Imprimis damages. Not so. The Ninth Circuit expressly rejected a requirement that
2   actual confusion (or even actual lost sales) is a prerequisite to recovery of damages for
3   deliberate trademark infringement. *Lindy Pen*, 982 F.2d at 1410–11. In any event, as
4   explained above, there was evidence of actual confusion.

### 3.   Allegedly not a "Two-Player Market"

6      Defendants note that this Court previously held in entering summary judgment
7   on false advertising claims that this is not a "two-player market." The evidence at trial
8   on that point, however, was different than the evidence presented at summary
9   judgment. As explained above, there was substantial evidence showing that the only
10  players in town for doctors or patients seeking combination, compounded eye drops
11  were the parties herein. Regardless, the standard for application of the "proxy theory"
12  is not whether the parties are the only competitors in the marketplace, but whether they
13  are ***direct*** competitors. *Maier Brewing Co.*, 390 F.2d at 123; *Fishman*, 684 F.3d at 196
14  ("if direct competition had been established, the evidence tendered of Esteban's
15  revenues might have been sufficient").

### 4.   Allegedly no Basis to Calculate Damages

17     Again citing to cases outside the "proxy theory" context, Defendants state that
18  there was no basis from which the jury could have calculated damages. That is not true.
19  As explained above, bedrock law, as well as 15 U.S.C. section 1117 itself, provides the
20  method of calculation—*i.e.*, the plaintiff bears the burden of proving the defendant's
21  revenues associated with the infringing goods, and the burden then shifts to the
22  defendant to prove any deductible costs or percentage of profit not attributable to the
23  infringement. Imprimis followed the law and presented the requisite proof.

### 5.   Allegedly Arbitrary Damages Award

25     Defendants claim that "arbitrariness of the damages award" is proof that there
26  was no reasonable basis to calculate damages. As a threshold matter, it is not this
27  Court's (or any court's) function post-trial or on appeal to re-construct how a jury
28  reached its damages figures. A jury "is entitled to choose a damages award within the

PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

amounts advocated by the opposing parties." *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1042 (N.D. Cal. 2016) (jury's award "must simply be within the range encompassed by the record as whole"). The only question is thus whether the award was between $0 and Defendant's revenues from the infringing conduct. It was. It therefore should not be disturbed. *See*, *e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) ("[A] jury verdict apportioning less than 100% of the profits but more than the percentage estimates of [defendant's] experts does not represent clear error."); *see also Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co., Ltd.*, 2024 WL 2193323 (N.D. Cal. May 15, 2024) ("Here, the jury awarded damages that were *less* than the maximum for which there was evidence: $17.7 million, instead of the total $19 million that Dr. Vanderhart testified to. Jury Verdict at 6. As noted above, BabyBus does not provide any authority to show a new trial is warranted when the jury finds a damages amount that is *less* than the evidence shows. $17.7 million as opposed to $19 million is not "[e]xcessively speculative" enough to require rejection") (internal citation omitted).

And although irrelevant at this stage, Defendants' speculation as to the jury's "arbitrariness" is unsound. Defendants find arbitrariness in the award of $4 million on two marks even though the revenue on those marks was $3 million. But Defendants ignore that the evidence showed the revenue figures were solely through 2022, even though Defendants continued to use the marks for the next two years, with increasing revenue. TT at 574:25–575:8 The jury thus could have concluded that the revenues for those two marks was significantly higher than the $3 million in pre-2023 revenue. Similarly, although Defendants question why the jury awarded different percentages for different marks, the jury was entitled to do so. They may have determined, for example, that the marks that had less profit were less valuable to Defendants.

### E.    A Final Word on Damages

In late 2023, Judge Benitez refused to alter post-trial a trademark infringement verdict more sizable than Imprimis's—a decision later affirmed. *See Stone Brewing*

Case No. 3:21-CV-01305-BAS-(DDL)
PLAINTIFF IMPRIMISRX, LLC'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR

1   *Co., LLC v. MillerCoors LLC*, 2023 WL 6450199, at *7–8 (S.D. Cal. Sept. 28, 2023),

2   *aff'd*, *Stone Brewing Co., LLC v. Molson Coors Beverage Co. USA LLC*, 2024 WL

3   5244556, *3–4 (9th Cir. Dec. 30, 2024). The jury awarded $56 million out of a

4   maximum request of $216.15 million. *Id.* at *8. Judge Benitez candidly stated that if

5   he had been sitting as fact-finder, he would not have awarded as much (or perhaps

6   anything at all). Indeed, Judge Benitez stated that he believed, pre-trial, that Stone's

7   damages request was "fantasy land." *Id.* at *10. Nevertheless, he recognized that the

8   jury awarded far less than the plaintiff requested, his role post-trial was limited, and

9   should his own views of the evidence infect his decision, they "could very well

10  eviscerate the right to trial by jury." *Id.* Judge Benitez's honest application of the

11  restrictions on overturning jury verdicts—which was echoed by the Ninth Circuit in

12  affirming his ruling—are well-reasoned and apt. The jury's hard work in this case

13  should not be rendered all for naught. The post-trial motions should be denied in full.[3]

14          Respectfully Submitted:

15  Dated:  April 11, 2025                    ELLIS GEORGE LLP

16                                            Keith J. Wesley
                                              Christopher W. Arledge
17                                            George B. A. Laiolo

18

19                                            By:    *s/ Keith J. Wesley*

20                                                  Keith J. Wesley
                                            Attorneys for Plaintiff and Counter-Defendant
21                                          ImprimisRx, LLC

22

23

24  _____
    [3] Defendants' footnote 19 purports to make other arguments, but in a shotgun and

25  cursory fashion. The footnote is inadequate; the arguments are waived. *See*, *e.g.*,

26  *Isabel v. Reagan*, 987 F.3d 1220, 1225 n.7 (9th Cir. 2021) ("Isabel waived any
    arguments that his HAVA claim was improperly dismissed by failing to address the

27  claim in his opening brief except in a footnote"); *Khoja v. Orexigen Therapeutics,*
    *Inc.*, 498 F. Supp. 3d 1296, 1309 n.4 (S.D. Cal. 2020) ("Arguments raised only in

28  footnotes . . . are generally deemed waived and need not be considered").