# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPRIMISRX, LLC,<br><br>                                    Plaintiff,<br><br>   v.<br><br><br>OSRX, INC.; OCULAR SCIENCE, INC.,<br><br>                                    Defendants. | Case No. 21-cv-01305-BAS-DDL<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES UNDER THE LANHAM ACT; AND**<br><br>**(2) DENYING WITHOUT PREJUDICE DEFENDANTS' REQUEST FOR ATTORNEYS' FEES UNDER THE COPYRIGHT ACT**<br><br>**(ECF No. 385)** |

Presently before the Court is Defendants OSRX, Inc. and Ocular Science, Inc.'s Motion for Attorneys' Fees. (Mot., ECF No. 385.) Defendants argue they are entitled to $3,013,183.82 in fees under the Lanham Act and the Copyright Act. (*Id.*) Plaintiff ImprimisRx, LLC opposes. (Opp'n, ECF No. 405.)

The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons

explained below, the Court denies Defendants' request for fees under the Lanham Act. Further, the Court denies without prejudice Defendants' request for fees under the Copyright Act.

## I.    BACKGROUND[1]

Plaintiff ImprimisRx, LLC and Defendants OSRX, Inc. and Ocular Science, Inc. are competitors. They operate compounding pharmacies that focus on medications used in optometry and ophthalmology. Compounding is the practice of combining, mixing, or altering ingredients of an existing drug to create a product tailored to the needs of a specific patient.

The parties have a history of litigation. In 2016, Plaintiff sued Ocular Science over its use of an eyedrop brand called Droplet, which Plaintiff claimed was similar to its brand named Dropless. At that time, Ocular Science was also using two compounding formulas for eyedrops known as Pred-Moxi and Dex-Moxi. Plaintiff was attempting to patent the formulations for these eyedrops.

Ultimately, the parties settled their prior dispute. They resolved that if Plaintiff was successful at patenting the eyedrop formulations, Ocular Science would stop manufacturing the formulas, and thus, would not use the associated eyedrop names—Pred-Moxi and Dex-Moxi. Further, Ocular Science would pay Plaintiff twenty percent of the revenue on sales of these products up until the time Ocular Science stopped using the two formulations.

Unfortunately, the U.S. Patent and Trademark Office did not issue the requested patents. Therefore, Ocular Science not only continued to use the formulations for its eyedrops and the associated names, but it also added more compounding formulas. Plaintiff later filed this suit against Ocular Science and OSRX, Inc., arising from Defendants' eyedrop sales and unfair competition.

---

[1] The Court incorporates its summary of the parties' dispute from the Order Denying Defendants' Renewed Motion for Judgment as a Matter of Law and Granting Remittitur ("Remittitur Order"). (ECF No. 368.)

## A.   Causes of Action

Plaintiff brought six claims against Defendants. (Third Am. Compl. ¶¶ 45–91, ECF No. 145.) To start, there were three claims arising under the Lanham Act. In Count One, Plaintiff sued Defendants for false advertising. (*Id.* ¶¶ 45–53.) Plaintiff alleged that Defendants made misleading statements regarding the safety and efficacy of their compounded drugs. (*Id.*) In Count Two, Plaintiff claimed Defendants infringed upon Plaintiff's trademarked names for various compounded eyedrops. (*Id.* ¶¶ 54–64.) In Count Three, Plaintiff claimed that because Defendants used Plaintiff's trademarks, Defendants falsely suggested that their eyedrops were made by or connected to Plaintiff. (*Id.* ¶¶ 65–74.)

In addition, in Count Five, Plaintiff brought a claim under the Copyright Act. (Third Am. Compl. ¶¶ 81–86.) Plaintiff alleged it copyrighted an "Order Form" for its products. (*Id.* ¶ 82, *see also id.* ¶ 44.) Further, Plaintiff contended Defendants "copied the Order Form without permission and thus infringed" upon the copyright. (*Id.* ¶ 83.)

Finally, Plaintiff sought redress under California state law through two causes of action. In Count Four, Plaintiff claimed Defendants engaged in common law unfair competition by using Plaintiff's trademarks. (Third Am. Compl. ¶¶ 75–80.) And in Count Six, Plaintiff pled a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, based on its other allegations. (*Id.* ¶¶ 87–91.)

Defendants also filed counterclaims. (Answer to Third Am. Compl. & Countercls., ECF No. 152.) Most of these counterclaims were styled as requests for declaratory relief, such as for a determination that Plaintiff's marks are generic or that no unfair competition occurred. (*See id.* at 23:1–27:22.) Defendants, however, also brought one counterclaim for false advertising in violation of the Lanham Act based on Plaintiff's statements about its own products. (*Id.* at 27:23–28:22.)

## B.   Summary Judgment

The parties filed cross-motions for partial summary judgment. Much of the Court's Summary Judgment Order focused on the competing false advertising claims. The Court

initially explained that, ordinarily, the Federal Food, Drug, and Cosmetic Act ("FDCA") requires drug makers to obtain approval to sell pharmaceutical products under extended, rigorous approval guidelines. (Summ J. Order at 2:16–18, ECF No. 266.) Sections 503A and 503B of the FDCA provide exceptions from those approval guidelines for compounded drugs under certain conditions. (*Id.* at 2:18–20.) There are two versions of compounding pharmacies under these exceptions: (1) Section 503A pharmacies, which fill prescriptions for individual patients, and (2) Section 503B pharmacies, which produce compounded products in large quantities that are not necessarily tied to a specific patient. (*Id.* at 2:20–23.) Plaintiff operates both a Section 503A pharmacy and a Section 503B pharmacy. Defendants operate only a Section 503A pharmacy. (*Id.* at 2:23–25.)

In analyzing the parties' competing claims, the Court first considered Plaintiff's assertion that Defendants engaged in false advertising by, among other things, claiming that they operate in compliance with Section 503A of the FDCA. (Summ J. Order at 4:2–9.) The Court found there were disputed issues of fact with respect to the falsity, deception, and materiality elements of Plaintiff's false advertising claim. (*Id.* at 10:24–16:11.) That said, the Court concluded Defendants were entitled to summary adjudication of the injury element of the false advertising claim. (*Id.* at 16:23–21:18.) The Court reasoned that Plaintiff offered "no evidence it was actually injured by Defendants' alleged misstatements," such as evidence showing Plaintiff lost sales due to the contested misstatements. (*Id.* at 20:5–9.) Consequently, the Court granted Defendants' motion as to Plaintiff's Count One for false advertising under the Lanham Act. (*Id.* at 27:10–12.) Plaintiff's remaining Lanham Act, Copyright Act, and California state law claims survived for trial. (*Id.* at 27:12–15.)

The Court then considered Plaintiff's parallel request for summary judgment against Defendants' false advertising counterclaim. This claim was based on Plaintiff's statements that it is "compliant with highest quality standards" and is "100% dedicated to patient safety and regulatory compliance." (*See* Summ. J. Order at 4:14–26.) The Court found Defendants' counterclaim could not survive summary judgment for similar reasons as

- 4 -

Plaintiff's false advertising claim. (*See id.* at 25:14–26:4.)  Defendants did "not submit any documentary evidence or deposition evidence demonstrating they lost customers due to Plaintiff's alleged false advertisements."  (*Id.* at 26:21–23.)  Therefore, the Court granted Plaintiff's motion with respect to Defendants' counterclaim for false advertising under the Lanham Act. (*Id.* at 27:17–19.)

### C.    Trial

As the case approached trial, the parties lodged their Proposed Pretrial Order under the Civil Local Rules. (*See* ECF No. 410, at Attach. 1.) The Proposed Pretrial Order listed the causes of action that would be tried. (*Id.* at 2–3.)  Missing from this list was Plaintiff's Count Five for violation of the Copyright Act. (*See id.*)

Plaintiff's trademark infringement and unfair competition claims were tried before a jury. As detailed in the Remittitur Order, the trial focused on Plaintiff's claim that Defendants infringed upon nine names for compounded eyedrops, such as Pred-Moxi and Dex-Moxi. (Remittitur Order at 3:8–16.) The name of each compounding eyedrop uses a shorthand version of the chemical ingredients in the eyedrop. So, for example, the compounding drops sold by Plaintiff under the name Pred-Moxi contain the ingredients prednisolone and moxifloxacin. (*Id.* at 3:21–23.) Plaintiff claimed Defendants sold compounding drops that violated Plaintiff's trademarks because Defendants used the exact same shorthand names in the same order to sell their own eyedrops. (*Id.* at 3:24–26.) Defendants, on the other hand, argued that the names they used for their eyedrops were generic because the names simply referred to the ingredients in the drops. (*Id.* at 3:27–4:1.) The jury disagreed, finding trademark infringement and state law unfair competition with respect to all nine of the eyedrop names. (*Id.* at 4:1–2; *see also* Verdict 2, ECF No. 342.)

The jury not only found in Plaintiff's favor but also awarded colossal damages. The jury awarded $4 million for infringement of the marks on the Principal Register, $10.5 million for infringement of the marks on the Supplemental Register, and $20.4 million in

21cv1305

punitive damages under California state law, for a total of $34.9 million in damages.[2] (Verdict 4–5.)

### D.    Post-Trial Motions and Remittitur

Following the verdict, the Court considered Defendants' remaining counterclaims for declaratory relief, as well as their equitable defenses of laches and unclean hands. (Mot. Hr'g Tr., ECF No. 358.)  The Court ruled in Plaintiff's favor. (*Id.* at 18:16–22:22.) Thus, the Court entered judgment against Defendants in the amount of $34.9 million. (*Id.* 23:23–25; *see also* ECF No. 356.) The Court also prohibited Defendants from using the marks for their competing eyedrops. (ECF No. 356.)

Defendants renewed their request for judgment as a matter of law and sought a new trial. (ECF No. 359.) The Court found Defendants' Rule 50(b) arguments unpersuasive because the jury had sufficient evidence to find for Plaintiff on the issues of trademark infringement, damages, and willfulness. (Remittitur Order 7:7–16:4.)

As for the request for a new trial, the Court agreed that the jury's compensatory damages award was excessive. (Remittitur Order 16:22–19:17.) The Court found a remittitur was appropriate and reduced the total compensatory damages from $14,500,000 to $10,249,538. (*Id.* 19:16–17.) The punitive damages award was likewise excessive, leading the Court to reduce the award from $20.4 million to $1 million. (*Id.* 19:18–21:9.) Accordingly, the Court denied the motion for a new trial, but the Court conditioned this denial on Plaintiff accepting the remittitur in the amount of $11,249,538. (*Id.* 22:3–7.)

Plaintiff accepted the remittitur. (ECF No. 369.) The Court thus entered an Amended Judgment. (ECF No. 370.) Within fourteen days of entry of the Amended Judgment, Defendants filed their Motion for Attorneys' Fees. (ECF No. 385.) *See* Fed. R. Civ. P. 54(d)(2). The Motion is fully briefed. (ECF Nos. 405, 408.)

---

[2] The jury also found the infringement was willful for all nine marks and awarded $400,000 in statutory damages under the Lanham Act. (Verdict 5.) Plaintiff elected to recover the non-statutory damages.

21cv1305

## II.    ANALYSIS

### A.    Lanham Act

Defendants first argue they are entitled to attorneys' fees under the Lanham Act. (Mot. 6:23–9:6.) The longstanding rule is that attorneys' fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967). The Supreme Court held that, as originally written, the Lanham Act did not authorize fee-shifting. *Id.* at 721. Congress responded by amending the law in 15 U.S.C. § 1117(a). The Lanham Act now provides that in "exceptional cases," the court may award reasonable attorneys' fees to the "prevailing party." 15 U.S.C. § 1117(a).

Courts interpret the Lanham Act's fee-shifting provision in tandem with a "parallel and identical" provision found in the Patent Act, 35 U.S.C. § 285. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (en banc) (per curiam). The Supreme Court construed the Patent Act's fee-shifting provision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 552 (2014). Hence, the Supreme Court's guidance in *Octane* likewise applies to the Lanham Act's parallel fee-shifting provision. *SunEarth, Inc.*, 839 F.3d at 1181.

Under the *Octane* rule, an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554; *accord BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1278 (9th Cir. 2024). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Needless to say, there is no precise rule or formula for making this determination. *Id.* (citing *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)).

To illustrate, even though a defendant prevailed at trial, it was not an abuse of discretion to deny the defendant an award of attorneys' fees where the Lanham Act case was not exceptional. *BillFloat Inc.*, 105 F.4th at 1277. In *BillFloat*, the litigants were

"providers of small business financing." *Id.* at 1274. Their dispute centered on the competing use of the "SmartBiz" and "Smart Business Funding" marks. *Id.* The plaintiff brought suit for breach of a partnership agreement and trademark infringement. *Id.* The court granted summary judgment in defendant's favor on the breach of contract claim, but the case proceeded to trial on the trademark claim. *Id.* "After a four-day trial, the jury found that [the plaintiff] had not established trademark infringement by a preponderance of the evidence." *Id.* at 1275. Hence, the defendant moved for an award of fees, but the court denied the request to the extent it arose under the Lanham Act. *Id.*

On appeal, the Ninth Circuit held the court did not abuse its discretion in denying fees. *BillFloat Inc.*, 105 F.4th at 1278–79. As explained by Judge McKeown, even though the *Sleekcraft* infringement factors largely came out in the defendant's favor at trial, the plaintiff's "claim was hardly 'meritless,' and a positive result does not transform a trademark claim into an 'exceptional case.'" *Id.* at 1278. Moreover, although the district court granted summary judgment to the defendant on the breach of contract claim, "a dismissal of a single claim at summary judgment (particularly where another claim goes to trial) does not render a case exceptional." *Id.* at 1278 (citing *Octane Fitness*, 572 U.S. at 553–54). Finally, the Ninth Circuit was unpersuaded by the defendant's various complaints about the plaintiff's litigation conduct, which did "not rise to the kind of egregious litigation tactics that make a case 'exceptional' under the Lanham Act." *Id.*

Here, Defendants argue they prevailed on Plaintiff's false advertising claim at summary judgment. (Mot. 6:1–3.) They also point to the fact that Plaintiff abandoned its trademark infringement claim with respect to the "Pred-Ketor" mark on the eve of trial. (*Id.* 6:5–7.) Thus, even though Defendants lost at trial, they argue the Court should award a portion of the fees they incurred to defend the case because they achieved some victories under the Lanham Act. (*Id.* 9:17–11:18.)

Defendants' request for fees is unconvincing. At the threshold, the Court finds Defendants are not "the prevailing party" under the Lanham Act because their pretrial victories are eclipsed by Plaintiff's success at trial. Defendants prevailed at summary

21cv1305

judgment on Plaintiff's false advertising claim, but Plaintiff simultaneously prevailed on Defendants' false advertising counterclaim. Defendants lost on the remaining Lanham Act claims at trial. Plaintiff recovered not only millions in damages under the Lanham Act, but also a permanent prohibition on Defendants using various trademarks for their competing eyedrops. Thus, the judgment materially altered the relationship between the parties in Plaintiff's favor. *See Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008). And this success makes Plaintiff the prevailing party under 15 U.S.C. § 1117(a).

The Court recognizes that, in some cases, courts have found there is no prevailing party because "both parties obtained significant victories in judicial decisions in each of their favors." *See, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18-CV-967-GPC(MSB), 2023 WL 7597630, at *7 (S.D. Cal. Nov. 14, 2023); *see also Univ. Acct. Serv., LLC v. Schulton*, No. 3:18-CV-1486-SI, 2020 WL 4053499, at *2 (D. Or. July 20, 2020). This case does not fit into that category, however, because the core of the dispute advanced to trial, and Plaintiff prevailed under the Lanham Act.

But even if this lawsuit were such a mixed judgment case, the Court would not award fees under the Lanham Act. The issues Defendants succeeded on do not "stand[] out from others with respect to the substantive strength of [Plaintiff]'s litigating position" or "the unreasonable manner in which the case was litigated" by Plaintiff. *See Octane Fitness*, 572 U.S. at 554. In other words, although Plaintiff's false advertising claim was unsuccessful, the claim was not "uncommon" or "rare." *See id.* at 553–54. At summary judgment, the Court found there were genuine issues of material fact as to whether Defendants made false or misleading advertisements, but Plaintiff introduced inadequate evidence of a cognizable injury under the Lanham Act. (*See* Summ. J. Order 10:6–20:23.) Upon review, from Defendants' perspective, the Court finds the claim they faced was not "exceptional" under the *Octane* rule. And to echo Judge McKeown, "a dismissal of a single claim at summary judgment"—particularly where other claims go to trial—"does not render a case exceptional." *See BillFloat Inc.*, 105 F.4th at 1278–79; *see also Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 824 (9th Cir. 2025) (affirming denial of fees where the plaintiff

- 9 -

"showed a reasonable basis to pursue its trademark claim"). Therefore, it is not appropriate to shift fees under the Lanham Act.

In sum, the Court concludes Defendants are not the prevailing party under the Lanham Act. *See* 15 U.S.C. § 1117(a). The Court also finds that, from the vantage point of Defendants, the case was not exceptional. *See id.*; *see also Octane Fitness*, 572 U.S. at 554. Hence, the Court denies their motion for fees under the Lanham Act.

**B.    Copyright Act**

Defendants' Motion likewise seeks fees under the Copyright Act. As mentioned, Plaintiff's copyright claim centered on Defendants' alleged use of a copyrighted "Order Form" that Plaintiff used for its products.  (Third Am. Compl. ¶¶ 81–86.)

Under the Copyright Act, the court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Thus, the Copyright Act includes the familiar "prevailing party" language, but unlike the Lanham Act, the Copyright Act does not require that a case be exceptional to justify fee-shifting. *See Hist. Rsch. v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996) (per curiam). "Although the court enjoys 'wide latitude to award attorney's fees based on the totality of circumstances in a case,' its discretion must remain tethered to judicial guideposts." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 203 (2016)).

In *Fogerty v. Fantasy, Inc.*, the Supreme Court provided a nonexclusive list of factors for courts to consider in making a fee determination: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534 n.19; *see also Kirtsaeng*, 579 U.S. at 202.  The Ninth Circuit "added factors that may be considered and need not all be met: the degree of success obtained in the litigation, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious litigant." *Glacier Films*, 896 F.3d at 1037 (citation modified) (quoting *Perfect 10, Inc. v.*

21cv1305

*Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). The Ninth Circuit has also underscored that "courts should accord substantial weight to the reasonableness of the losing party's legal and factual arguments." *Id.* (citation modified) (quoting *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018)).

Defendants submit that they are the prevailing party on the copyright claim because Plaintiff abandoned this claim shortly before trial. (Mot. 6:12–13.) Plaintiff did not include its copyright claim in the parties' Proposed Pretrial Order. (*See* ECF No. 410, Attach. 1, at 2–3.) Under Civil Local Rule 16.1(f)(6), "[a] cause of action in the Complaint . . . which is not listed" in the parties' pretrial order "will be dismissed with prejudice." Consequently, the Court agrees with Defendants that Plaintiff's copyright claim has been dismissed with prejudice by operation of the Court's Local Rules. *See* Civ. L.R. 16.1(f)(6); *see also* Fed. R. Civ. P. 83.

As for whether this dismissal means Defendants are the "prevailing party," the Court looks to the Supreme Court's interpretation of this term. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016). In construing this term, the Supreme Court has reasoned that "[t]here is no indication that Congress intended that defendants should be eligible to recover attorney's fees only when courts dispose of claims on the merits." *Id.* at 432. Thus, even though the Court did not dispose of Plaintiff's copyright claim on the merits, the Court finds Defendants are the prevailing party because the claim has been dismissed with prejudice and cannot be refiled. *See id.*; *compare Nutrivita Lab'ys, Inc. v. VBS Distribution Inc.*, 160 F. Supp. 3d 1184, 1190 (C.D. Cal. 2016) (finding voluntary dismissal of copyright claims with prejudice conferred prevailing party status on the defendants), *and Bruce v. Teleflora, LLC*, No. CV13-3279 ODW CWX, 2014 WL 2710974, at *2 (C.D. Cal. June 16, 2014) (same), *with Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009) (finding defendants were not the prevailing party where copyright claims were voluntarily dismissed without prejudice).

Even so, the Court must analyze whether shifting fees is appropriate under the relevant factors. Defendants' briefing on this inquiry is razor-thin. (*See* Mot. 9:9–16.)

- 11 -

21cv1305

There is no discussion of the frivolousness, motivation, or objective unreasonableness of Plaintiff's copyright claim in Defendants' moving papers. (*See id.*) *See Fogerty*, 510 U.S. at 534 n.19. In opposition, Plaintiff contends it "elected not to pursue the claim at trial because, as [Defendants] had stopped using the infringing order form, the cost of trying the claim did not make economic sense." (Opp'n 6:13–15.)  At this point, the Court finds it has insufficient information to determine whether shifting fees under the Copyright Act is appropriate.

Accordingly, although Defendants are the prevailing party on the Copyright Act claim, the Court lacks the necessary information to analyze the request to shift fees under the controlling law. *See Glacier Films*, 896 F.3d at 1037. Therefore, the Court denies without prejudice Defendants' request for fees under the Copyright Act.

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Attorneys' Fees. (ECF No. 385.) Specifically, the Court denies the request for fees under the Lanham Act, and the Court denies without prejudice the request for fees under the Copyright Act.

If Defendants desire to renew their request for fees under the Copyright Act, then they must file a renewed motion no later than **June 16, 2026**. Any renewed motion must address the Copyright Act factors identified by the Ninth Circuit in *Glacier Films*, 896 F.3d at 1037.  The renewed request must also include itemized billing records, a justification for the requested hourly rates, and support for any apportionment of fees among the claims.

**IT IS SO ORDERED.**

**DATED: May 20, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 12 -

21cv1305